**GAYNOR CONST. CO., Inc., et al. v. BOARD OF TRUSTEES, ECTOR COUNTY INDEPENDENT SCHOOL DIST.**

No. 4741.

Court of Civil Appeals of Texas. El Paso.

June 28, 1950.

Rehearing Denied July 19, 1950.

McGILL, Justice.

This is an appeal from a judgment of the District Court of Ector County, 70th Judicial District.

The Board of Trustees, Ector County Independent School District (the Board) sued Gaynor Construction Company, Inc., (Gaynor) as principal and Aetna Casualty & Surety Company (Aetna) as surety for the amount of a proposal bond submitted by Gaynor with its bid for the construction of a Junior High School building for the Ector County Independent School District which Gaynor submitted to the Board and which was accepted by the Board. Trial to the court resulted in a judgment in favor of the Board against Gaynor and Aetna for $35,115, the full amount of the bond, with interest from July 16, 1949 at the rate of six per cent. per annum. The judgment provides that execution shall first be levied against the property of Gaynor, and that if Aetna should be compelled to pay any part of the judgment, the judgment should not be discharged but should be considered as assigned to Aetna to the extent of such payment. Gaynor and Aetna have appealed.

A summary of the material findings of fact and conclusions of law filed by the trial court is deemed essential to an understanding of the points involved:

The Board delivered to Gaynor its authorized plans and specifications for a Junior High School building to be constructed for the Ector County Independent School District in Odessa, Texas. The specifications included a notice to bidders containing the following provisions:

"Sealed proposals will be received by Virgel A. Davis, Architect and Board of Trustees, Ector County Independent School District, Owner, in the Junior High School Library, 308 West 9th Street, Odessa, Texas, not later than 2:00 P.M. Saturday, June 18, 1949, for the construction of A Junior High School Building, Odessa, Texas.

\* \* \* \* \* \*

"Proposals may not be withdrawn for a period of thirty (30) days from and after

Emil Corenbleth, R. T. Bailey, both of Dallas, for appellants.

Blanton, Deaderick, McMahon, Fuller & Hancock, all of Odessa, for appellee.

the opening of bids. Each proposal, to be eligible for consideration, must be accompanied by a certified check or Bidder's Bond, in the amount of five per cent (5%) of the total amount of the respective proposal to insure the Owners against loss occasioned by the bidder's failure to execute a Contract, if awarded, or to furnish satisfactory Contract Surety.

\*     \*     \*     \*     \*     \*

"The right is reserved, as the interests of the Owner may require, to accept any or reject all proposals, or to overlook any irregularities or informalities in any proposals received.

\*     \*     \*     \*     \*     \*

*"Cashier's Check or Proposal Bond:* A cashier's check or an acceptable proposal bond, payable without recourse to the order of the Board of Trustees, Ector County Independent School District, Odessa, Texas, in an amount not less than five per cent (5%) of the amount of the bid, must accompany each bid as guarantee that, if awarded the contract, the bidder will promptly enter into a contract and execute a bond on the form provided.

"The cashier's check or bid bond submitted with each bid shall be considered as the amount of the liquidated damages which the Owner will sustain by the failure, neglect or refusal of the bidder to execute and deliver the agreement and bond should the contract be awarded him.

"If the bidder defaults in executing the agreement within ten days after written notification from the Architect of the award of the contract to him, the cashier's check or proposal bond shall become the property of the Owner.

"If the proposal is not accepted within 10 days after the time set out for the submission of the bids, or if the successful bidder executes and delivers agreement and bond, the cashier's check or proposal bond shall be returned.

\*     \*     \*     \*     \*     \*

"Bond: The successful bidder shall furnish bond covering the faithful performance of the contract and the payment of all obligations arising thereunder. Bond shall cover one hundred per cent (100%) of the contract sum and shall be submitted to the Architect for approval."

The Board caused notice containing these provisions to be published in local newspapers and trade journals (the uncontroverted evidence shows that the notice was published in the Odessa American on the 2nd and 3rd days of June, 1949, and in the Texas Contractor on May 31 and June 7, 1949.) Gaynor submitted a bid in the amount of $701,000 accompanied by its bond in the amount of 5% of the bid with Aetna as Surety. The bond is as follows:

"Proposal Bond.

"Know All Men by These Presents:

"That we, Gaynor Construction Company, Dallas, Texas, as the Principal (hereinafter called the Principal), and The Aetna Casualty and Surety Company, of Hartford, Connecticut, a corporation of the State of Connecticut, as Surety (hereinafter called the Surety), are held and firmly bound unto Ector County Independent School District (hereinafter called the Obligee) in the penal sum of 5% of the Maximum amount Bid————— (5%) Dollars, for the payment of which, well and truly to be made, we bind ourselves, our heirs, administrators, executors, successors and assigns, jointly and severally, firmly by these presents.

"Sealed With Our Seals this 6th day of June 1949.

"Whereas, Said Principal is submitting herewith a bid or proposal, for General Construction of a Junior High School Building at Odessa, Texas.

"Now Therefore, the condition of this obligation is such That if said Principal shall be awarded the contract which said Principal has proposed to undertake, briefly described above, and shall, within the time allowed after notice of such award, enter into contract pursuant to such award and give bond for the faithful performance of the contract, then this obligation shall be null and void; otherwise it shall be and remain in full force and effect.

"Provided, However, That this bond is issued subject to the following condition:

"That Surety shall in no event be liable for a greater amount hereunder than the

difference between the amount of the Principal's bid or proposal, and the lowest amount in excess of said bid, or proposal, for which said Obligee may be able to award said contract within a reasonable time.

"Gaynor Construction Company

"By:

"The Aetna Casualty and Surety Company

"By: S/ W. B. Gracey, Resident Vice-President. (Corporate Seal)"

Aetna delivered the bond to Gaynor in the condition shown with the intention that it should be delivered by Gaynor to plaintiff together with Gaynor's proposal and in conjunction therewith, to be effective upon such delivery. Gaynor so delivered it to plaintiff, intending that it should be effective and binding on both the principal and the surety named therein, and that it should be taken in conjunction with its said proposal, and plaintiff so accepted it.

The circumstances surrounding the receipt of Gaynor's said proposal and bond by plaintiff were as follows: The plaintiff school board met at the Junior High School Library, the appointed place shortly before 2:00 p. m. on June 18, 1949, for the purpose of receiving, opening, reading and tabulating the general construction bids, as well as the plumbing and certain other bids on the Junior High School and other jobs which are not here involved, with its architect and the representatives of the bidders (some 100 persons) present. At 2:00 p. m. it began to open, read aloud and tabulate the general construction bids for the Junior High School which it had received, there being three such bids, the lowest of which was in the sum of $779,780. When this was finished, it began opening, reading and tabulating the bids for the plumbing work for the Junior High School, and while this was going on, at some time between 2:20 and 2:45 p. m., James T. Parrish, Gaynor's superintendent, appeared and presented to plaintiff a sealed envelope containing Gaynor's above proposal and bond. He entered the room out of breath and gave as the reason for his lateness that his taxi had taken him to the wrong place and that he had to locate the place where the meeting was being held and "hoof it" over there. He earnestly requested the Board to receive and consider Gaynor's said bid and bond in spite of his lateness in presenting them. Plaintiff Board asked the other bidders if there was any objection on their part to so doing, and none was heard. Thereupon, plaintiff decided to receive and consider Gaynor's said bid and bond, and so did, opening and reading same aloud and tabulating same along with the other general construction bids on the Junior High School. There was no objection to their so doing either then or later, by the other bidders or by any one else, except for the objections made by defendants in this suit as a ground for avoiding liability.

After all bids were opened the Board retired and awarded the contract to Gaynor, and duly notified Gaynor in writing of such award. On July 16, 1949, Gaynor notified the Board that it would not execute the contract or furnish performance bond and demanded return of its bid and proposal bond, which the Board refused. Thereafter, at the same meeting, the Board accepted the bid of T. C. Bateson Construction Co. for the same construction in the amount of $779,780 (this being the next lowest bid for such general construction opened at the meeting of June 18, 1949,) and awarded the contract to such company in such amount. This company, however, refused to execute the contract or perform on the ground that it had released its subcontractors in the meanwhile. Subsequently after reasonable advertisement for bids, on August 20, 1949, and within a reasonable time, the Board awarded the same general construction contract for the said Junior High School Building with the same plans and specifications to another construction company for an amount exceeding $701,000 by more than $35,115. The Board received no bids on said contract at said second letting which did not exceed the sum of $701,000 by far more than $35,115 and was not able to award said contract for an amount which did not exceed $701,000 by more than $35,115. The actual damages

caused by Gaynor's failure to execute the contract and furnish performance bond were far in excess of $35,115.

The Court concluded:

"1.

"The bond was valid and binding upon both the principal and the surety named therein, though no officer of the principal subscribed his name on behalf of the corporation. The bond was executed by the principal in the sense that its name was typed at the foot thereof, and it was delivered to Plaintiff with the Principal's duly executed bid proposal, which referred to it and in effect adopted the typewritten signature.

"The surety executed and delivered the bond to the principal to be delivered to plaintiff in connection with the bid with the intention of being bound by it, and allowed the principal to take the bond in the condition in which it was introduced into evidence. It cannot escape liability on the bond on the ground of its failure to require the principal's officers to subscribe their name thereto before placing it in principal's possession. The bond was a part of the bid proposal, which was duly executed by principal, and the bond created no greater liability on the principal's part than that created by the bid proposal itself. The execution of the bid referring to the bond delivered therewith was in effect an execution of the bond.

"2.

"Plaintiff had the general authority to let the contract to erect and construct the school building by any procedure it saw fit to adopt, with or without advertising for bids, on private treaty or public letting, and to waive any irregularities or informalities in the procedure adopted as it saw fit, the only limitation on its broad and general authority in the matter being that it must exercise good faith.

"3.

"In this transaction the Board was acting in good faith, and, in waiving the lateness of Gaynor's bid, was merely waiving an irregularity in the bid, namely its lateness, as it had plainly reserved the right to do in its notice to bidders. Neither Gaynor, which earnestly requested that the irregularity be waived, nor Aetna, which delivered the bond pursuant to a notice to bidders which provided for such waiver at the option of the board, of which provision Aetna must be held to have had notice, is in a position to avoid liability by maintaining that the bid and bond were void on account of such irregularity.

"4.

"The transaction is in no wise governed or affected by Article 2368a of the Revised Civil Statutes of Texas, which applies only to contracts let by cities and counties, and the cases decided under that statute, and similar statutes in other states, are therefore inapplicable. This transaction is governed by Articles 2780 and 2752 of the Revised Civil Statutes of Texas, which give the trustees of independent school districts broad and unrestricted power and discretion in such matters."

Appellants predicate their appeal upon three points. They are in substance: (1) The Board could not receive or act upon Gaynor's proposal to construct a Junior High School for the Ector County Independent School District, such proposal having been submitted after the time called for in the specifications and the notice and advertisement for competitive bids; (2) The Board having accepted and released the proposal of T. C. Bateson Construction Company, the next low bid, cannot recover any damages; (3) The Board having made the performance of the contract impossible, Gaynor is excused from performance thereunder.

Appellants have cited two Articles of the Texas Constitution, and 35 Articles of the Statutes of this State, and numerous decisions of courts of this and other jurisdictions in an effort to convince us that the Ector County Independent School District or the Trustees thereof were required to comply with the provisions of art. 2368a, Vernon's Ann.Civ.St. before they could enter into a valid contract for the construction of a Junior High School for the district.

We have carefully read and considered all of these statutes and authorities and

we are not convinced. On the contrary, we concur in the view of the trial court that the Board in awarding the contract to Gaynor was governed by Articles 2752 and 2780, R.C.S., and was not required to call for competitive bids as provided by art. 2368a. Appellants concede that this is the view of the Attorney General's Department of this State, as reflected by two opinions, one dated July 14, 1914, long prior to the enactment of art. 2368a in 1931, and one dated March 27, 1939, some eight years subsequent to the enactment of this statute. The pertinent portion of the opinion of July 14, 1914, is as follows:

"Hon. W. F. Doughty,
"Superintendent Public Instruction,
"Building.
"Dear Sir:

"The Department is in receipt of your communication of July the 13th, in which you propound four interrogations, as follows:

"(1) Are Boards of trustees required to advertise for bids for the erection of school houses built under their supervision?

&ast; &ast; &ast; &ast; &ast; &ast;

"(1) Answering your first question, we beg to say that nowhere in the Statute is it required of boards of trustees to advertise for bids for the erection of school houses for the district. On the other hand, the management and control of school property is vested in the board of trustees, * * * particularly in this true in independent districts. The questions propounded by you all relate to an independent district.

"Article 2844 Revised Statutes of 1911 [Vernon's Ann.Civ.St. art. 2752], dealing with the construction of school houses in common school districts provides that the trustees shall contract for the erection of school buildings and superintend their construction, but does not provide for the letting of contracts under competitive bids. The spirit of the law being to give to independent districts a freer hand in the management and control of their affairs, we think the interpretation should be even stronger in regard to an independent district that the trustees may let the contracts in any manner as they see fit, and would not be required, (unless they so desired), to let contracts for school buildings under competitive bids, provided, of course, that if such district is created by special act of the Legislature, the act itself does not require competitive bids in the letting of contracts. We, therefore, answer your first question in the negative."

This opinion is signed by C. W. Taylor, Assistant Attorney General. In connection with this opinion we refer to H.B. 59, passed by the 37th Legislature in August, 1921, Sp.Laws, 1st Called Session, c. 48, which created the Ector County Independent School District. Relative to the powers and duties of the Trustees, this Act, Section 4, provides: "Sec. 4. The Ector County Independent School District, as created by this Act, shall have and exercise, and is hereby vested with, all the rights, powers, privileges and duties of a town or village incorporated under the General Laws of the State for free school purposes only, and the board of trustees of said Ector County Independent School District shall have and exercise and are hereby vested and charged with all of the rights, powers, privileges and duties conferred and imposed by the General Laws of this State upon trustees of independent school districts incorporated under the General Laws of Texas for free school purposes only."

The opinion of March 27, 1939 is reproduced in full:
"Honorable T. M. Trimble,
"First Assistant State Superintendent,
"Austin, Texas.

"Dear Sir:

Opinion No. 0-525
Re: Whether trustees of common school district may award building contract without advertising for bids.

"We are in receipt of your letter of March 17, 1939, wherein you request our opinion in response to the following questions:

" 'May the trustees of a common school district legally let a building contract

against the bond fund without first having advertised for bids? If the trustees are not permitted to do this, what would be the required kind of advertising?"

"The authority for the trustees of common school districts to make such contracts is found in Article 2752, Revised Civil Statutes, which reads as follows:

" 'The trustees of a school district shall contract for the erection of the buildings and superintend the construction of the same; and the county superintendent shall draw his warrant upon the school fund so appropriated only upon the accounts first approved by them. No mechanic, contractor, material man, or other person, can contract for, or in any other manner have or acquire, any lien upon the house so erected or the land upon which the same is situated; and all contracts with such parties shall expressly stipulate for a waiver of such lien.'

"It will be noted that same contains no requirement for the trustees to submit such contracts to competitive bidding. Article 2368a, Revised Statutes, makes requirements of that nature pertaining to certain contracts of cities and counties (the latter acting through their commissioners' courts), but neither that statute nor any other makes any such provision relative to the contracts mentioned in your inquiry.

"The nearest case in point which we have been able to find is that of Stapleton v. Trussell, Tex.Civ.App., 196 S.W. 269. Therein the trustees had advertised for bids but had not let the contract to the lowest bidder. After quoting the above Article 2752, the court said:

" 'So doubtless the trustees complained of in this action had the power, under the law, to advertise and receive bids for the erection of a schoolhouse in common school district No. 67; but there is nothing in the law that arbitrarily requires such board to accept the lowest bid that may be received. As specified in the law, their power in making such contracts is general, and in the absence of limitations they are required merely to act faithfully and in the exercise of their best judgment so as to best serve the interest of their district.'

"In Wright v. Jones, 55 Tex.Civ.App. 616, 120 S.W. 1139, it was held that the trustees of an independent school could appoint a committee to let such a contract, the board of trustees authorizing and adopting the same."

While of course these opinions are not binding on us, and are not conclusive, yet they are entitled to great weight.

South Western Broadcasting Co. v. Oil Center Broadcasting Co., Tex.Civ.App., 210 S.W.2d 230, 233 (5). Especially is this so since we judicially know that these opinions have served as guides to the Trustees of Independent school districts throughout this state in the administration of their duties relating to contracting for the construction of such buildings for a number of years. Furthermore, art. 640, Revised Statutes of 1911, which appellants say was a forerunner to art. 2368a, was in effect when the Attorney General wrote his opinion of July 14, 1914. See Vol. 1, Vernon Sayles' Texas Civil Statutes 1914, art. 640. This article reads: "Art. 640. Bids to be taken on contract work; contract to be let to lowest and best bidder. Rights to reject.—When work is done by contract in any county, political subdivision or defined district, bids shall be invited by publishing an advertisement in a newspaper or newspapers published in such county, and in a paper or papers outside of the county, when the commissioners' court may deem it advisable to do so, and the contract shall be awarded to the lowest and best bidder; provided, however, that the commissioners' court shall have the right to reject any and all bids."

While the Attorney General does not cite or refer to this Article in his opinion, we cannot assume that he was not cognizant of it. Therefore, when the Legislature enacted the Bond and Warrant Law of 1931 and amended it in 1947, art. 2368a, we must assume that it did so with full knowledge of the Attorney General's opinion of July 14, 1914, and that he regarded art. 640 as having no application to independent school districts. With this knowledge the Legislature failed to specifically provide in art. 2368a that independent school districts

should invite competitive bids by advertisement in a newspaper before entering into a contract for construction of school buildings. This, it seems to us, strongly indicates that the Legislature intended that independent school districts should not be subject to the requirements of art. 2368a.

■ The general powers and duties of trustees of a school district to contract for the erection of buildings are prescribed by art. 2752, V.A.C.S., above quoted in the Attorney General's opinion of March 27, 1939. This Article is taken from Sec. 84, Chap. 124, Acts of 1905, p. 263, which is a comprehensive Act providing for a complete system of public free schools in Texas, including the creation and management of independent school districts. See Sec. 133-153. Therefore, art. 2752 applies to independent school districts. Art. 2780, V.A. C.S., deals with the general powers of trustees of independent school districts. This Article provides: "Art. 2780. * * * Said trustees shall adopt such rules, regulations and by-laws as they may deem proper; and the public free schools of such independent district shall be under their control; and they shall have the exclusive power to manage and govern said schools, and all rights and titles to property for school purposes heretofore vested in the mayor, city councils, or school trustees by articles 3995, 4013 and 4032, Revised Statutes of 1895, or other statutes, general and special, except such cities as are exempted by this title, shall be vested in said board of trustees and their successors in office; and their claims shall apply to any action or suit which may arise to which said board is a party."

Appellants attempt to limit the general powers and duties prescribed by Articles 2752 and 2780 by art. 2368a, which is found in title 44, V.A.C.S., which deals with Commissioners' courts. All the authorities which appellants cite and earnestly urge have to do with the powers and duties of Commissioners' courts or cities, and are grounded on specific statutes. Appellants, in an effort to demonstrate that the public policy of this state is to protect the public interest by requiring competitive bids, cite Articles 608 and 623, R.C.S., which require the Board of Control to let contracts by competitive bids for supplying the State with printing, binding, stationery and supplies of like character for all departments, institutions and boards save such work as may be done at various educational and eleemosynary institutions, and art. 634a—1 as amended in 1947, Acts of the 50th Legislature, p. 401, Chap. 228, art. XIV, which requires that all motor vehicles, busses, bus bodies, tires and tubes purchased for any school district receiving state aid shall be purchased through the Board of Control on competitive bids, and art. 1659, V. A.C.S., requiring all supplies, road and bridge material or any other material for the use of a county be purchased by competitive bids. The public policy which appellants seek to have this court declare was declared by the Legislature by these statutes, and it is not the function of courts to extend it. This is clearly brought out in the opinion in Patten v. Concho County, Tex.Civ.App., 196 S.W.2d 833, 835, which construed art. 1659 and held that it did not apply to road machinery purchased for the use of the county. We quote: "Obviously the purchase of road machinery for the use of the county does not come within the terms of this statute. We find no statute, and none has been cited to us, expressly requiring competitive bids in the purchase by the county of road machinery for its own use. Whether good business management by the commissioners of the county's affairs requires such advertisement is, under existing law, a matter within the discretion of the commissioners court. And whether they should be required by law to do so, is for the Legislature to determine. The fact that the Legislature in 1931 repealed Art. 2368, R.C.S.1925, which did require such competitive bids for all contracts, and enacted V.A.C.S. Art. 2368a, which limited such requirements only to public buildings and public works, rather indicates a legislative intent to leave the matter to the sound discretion of the commissioners court."

■ Since art. 2368a is not applicable and the board was not required to call for competitive bids in order to enter into a valid contract for the construction of a Junior High School for Ector County Independent School District, appellants' con-

tention that it could not legally enter into such a contract with the Board because its bid was not submitted within the time specified falls of its own weight. The court having found that the Board acted with the utmost good faith in waiving the irregularity in the time for submission of appellants' bid, and that there was no fraud, the general powers of the Board prescribed by art. 2752 authorized it to enter into the contract with Gaynor and the Board was in no way limited or circumscribed by the provisions of art. 2368a.

We are also of the opinion that appellants' point to effect that the Board failed to show any damage is not well taken. Appellants requested the court to find that the Board cancelled its contract given to T. C. Bateson Construction Company. The court did not make this finding and it is not shown by undisputed evidence that the Board has ever released T. C. Bateson Construction Company from its proposal bond. As found by the court, the difference in the bids of T. C. Bateson Construction Company and of the J. W. Bateson Construction Company to whom the contract was let on readvertisement, and the amount of appellants' bid far exceeded the amount of appellants' proposal bond. The amount of appellants' proposal bond was specified as liquidated rather than as actual damages, and recovery was based on this theory. The amount of the bond was due when Gaynor breached its contract on July 16, 1949, and the Board awarded a contract to T. C. Bateson Construction Company. Legal interest was properly allowed from that date.

The judgment is in all respects affirmed.