**GUIDO AND GUIDO, INC. and National Surety Corporation, Appellants,**

v.

**CULBERSON COUNTY, Texas, Appellee.**

**No. 6123.**

Court of Civil Appeals of Texas, El Paso.

Oct. 21, 1970.

Rehearing Denied Nov. 18, 1970.

Glenn E. Woodard, Scott, Hulse, Marshall & Feuille, J. Sam Moore, Jr., El Paso, for appellants.

Joe Christie, Philip T. Cole, El Paso, for appellee.

## OPINION

FRASER, Justice.

This is a suit brought by Culberson County against the defendants for the enforcing of a bid bond submitted by the defendants in connection with the bidding for the construction of a hospital by Culberson County. Generally, the facts are as follows:

On May 12, 1969 plaintiff-appellee advertised for bids on a construction project known as the Culberson County Hospital in Van Horn, Texas. In response to this invitation for bids, defendant-appellants Guido and Guido, Inc., timely submitted a bid to perform the construction of the project. Accompanying such bid was a bid bond executed by the contractor and the defendant-appellant National Surety Corporation. The bid of defendant Guido and Guido, Inc., provided that if defendant Guido and Guido, Inc., did not execute a formal contract within ten days and de-

liver a surety bond at the same time, then the bid bond was to become the property of the plaintiff as liquidated damages for the delay and additional expenses caused thereby. Defendant National Surety Corporation bound itself to pay five per cent of the amount of the bid of $524,134.00, which amounts to $26,206.70, in the event Guido and Guido, Inc., failed to deliver an executed contract and a performance bond within ten days of written notice of acceptance of its low bid.

On June 30, 1969 plaintiff notified defendant Guido and Guido, Inc., in writing, that its bid proposal had been accepted. Defendant Guido and Guido, Inc., did not submit either an executed contract or a performance bond in support thereof within the required period of time. Thereafter, on or about July 14, 1969 the contract was awarded to the next low bidder, Area Builders, Inc., of Odessa, Texas, for a contract price of $536,900.00. On October 14, 1969 plaintiff brought suit against the contractor and the surety, and the defendants answered alleging, (1) that the defendants were not liable because the bid was submitted as a result of a unilateral mistake under such circumstances as to entitle the defendant to the rescission of the bid and bid bond; (2) that the damages should be limited to $8,453.00 because the defendants had tendered to the plaintiff a substitute contractor who was willing to undertake the project for a sum in excess, by that amount, of the bid of Guido and Guido, Inc.; (3) that the maximum liability of the defendants was the sum of $12,766.00, this being the amount by which the second lowest bid on the project in question exceeded the bid of Guido and Guido, Inc.; and (4) that the bid and bid bond documents relied upon by the plaintiff constituted and imposed an unenforceable penalty. Trial was before the court and, after such trial, judgment was entered in favor of the plaintiff in the sum of $26,206.70.

Appellants' first two points maintain that the trial court erred in finding that the contractor was not entitled to timely withdrawal or rescission of its bid because of an innocent mistake, so as to relieve the contractor and surety of any liability on the bid bond. Appellants' position is that several days after it had submitted its bid, the contractor Guido and Guido, Inc., was informed by its auditor that it was not financially able to go forward with this undertaking. On June 30, 1969, the appellee notified Guido and Guido, Inc., in writing that its bid proposal had been accepted. Appellants' position is that they should be relieved because of an innocent mistake, the mistake being that several days after the bid bond and the bid itself had been submitted along with the opening of all other bids, the contractors' auditor informed appellant contractor that it was not financially able to build this hospital or conform to the bid. Appellants take the position that because of this innocent mistake on the part of the contractors, Culberson County, the appellee, should relieve them from the liability on the bid bond. This has been done in other cases, but the cases cited by the appellants are all cases wherein the bidder made a substantial mistake in his arithmetic, from $18,000 to $100,000.00. The courts have relieved in these cases, and the law is well stated in James T. Taylor & Son, Inc. v. Arlington Ind. School Dist., 160 Tex. 617, 335 S.W.2d 371 (1960). The Supreme Court pointed out that before equitable relief would be granted against the unilateral mistake of the bidder, certain conditions must be present. The court went on to point out these conditions to be:

(1) the mistake is of so great a consequence that to enforce the contract as made would be unconscionable; (2) the mistake relates to a material feature of the contract; (3) the mistake must have been made regardless of the exercise of ordinary care; and (4) the parties can be placed in status quo in the equity sense, i. e., rescission must not result in prejudice to the other party except for the loss of his bargain. We do not find those elements present here. Here we simply have a situ-

ation where Guido and Guido, Inc., did not take the ordinary care and precaution to determine whether or not they could comply with their bid if it were accepted; nor is the mistake of so great a consequence that to enforce the contract would be unconscionable. It does not affect a material part of the contract, nor can the parties be placed in status quo. The trial court, in its findings, held that the mistakes testified to by the president of Guido and Guido, Inc., would not have been made if he and other responsible parties of Guido and Guido, Inc., had exercised ordinary care. This was just one of the many findings of the court substantiating its decision. With regard to the matter of status quo, the court found in its Finding of Fact No. 27 that the parties could not be placed in status quo. This finding is amply substantiated by evidence showing that Culberson County suffered losses of time and suffered additional expenses which could only be remedied by payment of damages. As stated above, we have examined the cases cited by appellants and do not find one comparable to the one here existing, as they all relate to substantial mistakes in arithmetic by the bidder, both as to money and one relating to the time feature of one year.

Therefore, because it is evident that the contractors' inability to perform is caused by its own carelessness, and would result in losses to the appellee, we overrule appellants' first two points, finding no valid reason that could require or compel the appellee to release the appellants from their obligation.

■ With regard to the third and fourth points of error, the appellants charge that the court erred on the ground that the bid bond was submitted for security and penalty purposes and, as such, would only limit the county to recover actual pleaded and provable damages. We do not consider this bid bond as a penalty provision or document, but rather as liquidated damages. When the County announced that it was going to build the hospital and invited bids, each bid had to be accompanied by a bid bond to protect the County from the very thing that happened here, and it was stipulated and understood by the bidders that five per cent of their bid would constitute the bid bond which, in this case, was executed by the National Surety Corporation. There is no need to discuss the necessity of a bid bond, as any potential builder needs to know that the bid is made in sincerity and after careful calculation and that the builder advertising for such bid will be protected from careless, facetious and improper bids. It will be noted from the facts here that the contract was eventually awarded to the next low bidder, and that the difference was $12,766.00. There was also an additional architect's fee of $894.00 and an additional consultant's fee of $1,000.00. Further, there was an increase of some seven to twelve per cent in the cost of the various items of equipment, including X-ray, etc. which occurred during the delay caused by the default of Guido and Guido, Inc. There was also an increase in the price of supplies for the hospital which could only be estimated. In addition to that, the County had to start all over again and get the approval of HUD and Hill-Burton, requiring visits, telephone calls and other expenses. The County also incurred attorneys' fees of $1,500.00. It must be admitted from a reading of the record that the added expense to the County and some of these expenses, such as supplies and equipment, and new meetings and consultations with the architect and consultant, and the submission of a new contract to HUD and Hill-Burton, were difficult to estimate with regard to the amount of damages caused by these unavoidable events. It is therefore obvious that this judgment, which is the extent of the bid bond, cannot be called a penalty, but should rightfully be designated as liquidated damages to compensate the County for the default of Guido and Guido, Inc., to go forward with its bid. In other words, much of the damage was not easily ascertainable. Added up, all of these presently ascertainable expenses caused by the con-

tractors' default would, by the most charitable estimate, exceed twenty or twenty-one thousand dollars, so it cannot rightfully be said that the judgment for the full amount of the bid bond, which was $26,-206.70, was in any way in the nature of a penalty. It may well have been inadequate to compensate the County fully for its losses in this situation. Other courts of this state have allowed a five per cent liquidated damage provision of bid bond similar to the one at issue. Gaynor Const. Co. v. Board of Trustees, 233 S.W.2d 472, wr. ref.; Hansen v. Eagle Mountain-Saginaw Ind. School Dist., 373 S.W.2d 817 (Tex.Civ.App.1963, ref. n. r. e.). Other jurisdictions have held that five per cent of a contractor's bid was reasonable as liquidated damages, as against the contention that it was a penalty. It is obvious that if a bid bond were not required, it might take months or even years for a customer to ascertain its losses because of the default of the contractor. Hence, it has become customary to put up a bid bond in the amount of five per cent of the prime contract.

█ Appellants also contend that the court erred in finding that the contractor and surety were not discharged from liability on the bid bond through their tender of a competent and qualified contractor, which tender was refused by the County. We find no error in the court's action there, as although the tendered contractor appears to be reliable and capable, still he had never bid on this particular job, and at the time Guido and Guido, Inc., tendered him as a substitute for them, they knew the amounts that the other contractors had bid and had an unconscionable and undue advantage. Also, the County could have had to start all over again with Hill-Burton and HUD and other agencies, as the tendered contractor was a stranger to the whole transaction and tendered by Guido and Guido, Inc. This, of course, would have been grossly unfair to the other bidders and to Culberson County. Further, there is no evidence in the record that the tendered contractor would have been acceptable to HUD and Hill-Burton, from whom the County was getting the bulk of its money to build the hospital.

█ Lastly, the appellants claim that the trial court erred in admitting evidence as to additional equipment, costs, consultant's fees and attorneys' fees. We do not find error in this point for the following reasons. If the court is to enforce the provision for liquidated damages, such must be reasonable, and only the admission of evidence can decide that point. The amount of actual damages is relevant to the issue of whether the stipulation for damages is reasonable, for it must be so in order to be enforced and must bear a reasonable relationship to the actual damages contemplated or, in fact, suffered as a result of the breach. This matter is well set forth in 22 Am.Jur.2d, Damages § 221 at page 307, as follows:

"Where the court is considering either the indefiniteness and uncertainty of probable damages or the reasonableness of the pre-estimate of probable damages in its attempt to determine whether a clause is one stating liquidated damages or a penalty, the court will, as a general rule, view the situation as of the time the parties entered into the contract. However, a stipulated sum may be held to be one for liquidated damages (1) where the damages which the parties might reasonably anticipate are uncertain or difficult to ascertain and (2) where the amount stipulated is either a reasonable estimate of the damages which would probably be caused by a breach or is reasonably proportionate to the damages which have actually been caused by the breach. In determining whether the stipulated sum is reasonably proportionate to the actual damages, the court necessarily must look at the situation, not at the time that the contract was entered into, but at the time of the breach. If the stipulated sum is grossly disproportionate to the actual damages, the sum will be held to be a

penalty. This gross disproportion may result from the sum stipulated being either too high or too low."

We think the court acted properly in hearing evidence as to the actual damages, and therefore appellants' point to such effect is overruled.

In summation, we find that the mistake was not one of a material feature of the contract; is not an amount; that its enforcement would not be unconscionable and was made by the absence of ordinary care on the part of the contractor; that the damages were difficult to ascertain; that the five per cent bid bond was in the form of liquidated damages and not a penalty; was properly proved and allowed, and that the tender of a non-bidding contractor was properly declined and that the court did not err in admitting evidence as to the damages suffered and to be suffered by Culberson County as the result of the contractors' default.

Therefore, appellants' points are all overruled and the judgment of the trial court is affirmed.