## PATTEN v. CONCHO COUNTY.
### No. 9581.

Court of Civil Appeals of Texas. Austin.

Oct. 9, 1946.

Moursund, Ball, Moursund & Bergstrom and Harry J. Polk, all of San Antonio, for appellant.

Robert G. Hughes, of San Angelo, for appellee.

BAUGH, Justice.

Appeal is from an order of the District Court of Concho County overruling appellant's plea of privilege to be sued in Bexar County, the county of his residence. Concho County sued J. M. Carter, former county commissioner of said county, his bondsmen and other named defendants, all of whom, except Patten, resided in Concho County. Numerous counts were alleged, but the only grounds of recovery alleged against Patten, material to this appeal, related to the purchase of, and payment for, two secondhand dump trucks, made by Patten to Carter in April, 1943, for and on behalf of Concho County, for the aggregate sum of $2,500. Said sale was alleged to have been illegal and void (a) because no bids advertised for; (b) no competitive bids were submitted; (c) because made in violation of OPA ceiling prices; and (d) because fraudulent in that said trucks were badly in need of repair when sold to the county and were not worth more than $250.

Fraud against the county by Patten and Carter was also alleged, in that Carter paid Patten in 1944 out of the funds of Concho County $500 for repairs on a Model L Tractor; $1,250 for repairs on a Model T Tractor, for which no value was received by the county, which sums were paid without competitve bids, and were not supported by any invoices. Items of $170 alleged to have been paid by Carter to Patten for hauling; and $146.58 for repairs by Patten for Carter, character not pleaded, were also alleged to be illegal for the same reasons.

In the original petition the plaintiff alleged that Carter, on April 26, 1943, received from C. Hunter Strain the sum of $1,250 due and belonging to Concho County, which he failed to pay into the county treasury, but converted to his own use, and for which he and the sureties on his bond were liable.

After the hearing on the plea of privilege had been completed the plaintiff, Concho County, filed a trial amendment to its controverting plea, wherein it alleged that the $1,250 of county funds alleged in the original petition to have been converted by Carter on April 26, 1943, was a check for that amount signed by Strain payable to "Concho County Precinct No. 2, ¢ J. M. Carter," indorsed by Carter to and cashed by Patten; and consequently that Patten also was jointly guilty with Carter of conversion of county funds. It is not controverted that this check was so indorsed and cashed as the final payment for the trucks purchased on behalf of the county from Patten.

The controverting plea asserted venue in Concho County as against Patten, under Secs. 4, 7, 9 and 29a of Art. 1995, R.C.S., Vernon's Ann.Civ.St. art. 1995, subds. 4, 7, 9, 29a. It now appears settled law that where a nonresident defendant is joined with a resident defendant, the plaintiff must allege a joint cause of action against both, or one against the nonresident so intimately connected with that asserted

against the resident defendant that they may be properly joined under the rule intended to avoid multiplicity of suits; and proof made of a bona fide prima facie cause of action against the resident defendant. Stockyards Nat. Bank v. Maples, 127 Tex. 633, 95 S.W.2d 1300; International Milling Co. v. Jernigan, Tex.Civ.App., 191 S.W. 2d 526; 43 Tex.Jur. § 125, p. 869.

A careful reading of the statement of facts discloses no competent proof of violation of OPA regulations; nor that the trucks were in a bad state of repair when sold, or worth only $250. Nor was prima facie proof made against Carter that repair bills on said trucks, or on other county machinery, paid by Carter to Patten, were anywhere near the sums alleged or that they were unreasonable, exorbitant or fraudulent. There was no proof as to the nature or extent of such repairs nor the value thereof. We are therefore relegated to two questions: 1. Whether the sale of said trucks to Carter, for the county, was illegal and void, because no competitive bids were advertised for nor received; and 2. Whether Carter was guilty of conversion of county funds; and if so, whether Patten was properly joined with him in such alleged conversion.

█ The county relies, on the issue of competitive bids, on Art. 1659, R.C.S., and on the cases of Wyatt Metal & Boiler Works v. Fannin County, Tex.Civ.App., 111 S.W.2d 787; Oakley v. Kent, Tex.Civ. App., 181 S.W.2d 919; and Stephens County v. H. C. Burt & Co., Tex.Civ.App., 19 S.W.2d 951, to sustain venue in Concho County. These authorities do not support its contention. Art. 1659 requires bids for "supplies of every kind, road and bridge material, or any other material, for the use of said county," etc. However, road machinery purchased by the county for its own use does not fall within the terms "supplies and material" as used in such statute. A review of numerous authorities on this question is found in Century Ind. Co. of Chicago, Ill., v. Shunk Mfg. Co., 253 Ky. 50, 68 S.W.2d 772. See also 26 Words & Phrases, Perm.Ed., p. 709.

█ Art. 6741 authorizes the purchase or hire by the commissioners court of "all necessary road machinery, tools, or teams, * * * to build or repair the roads," but places no restrictions on such purchases, other than that they be necessary for the purpose stated. Prior to its repeal in 1931 of Art. 2368, R.C.S.1925, that Article required advertisement for bids on all contracts on behalf of a county requiring expenditure of $2,000 or more of county funds; and competitive bids on all expenditures between $500 and $2,000, with certain exceptions not pertinent here. That statute made no exceptions other than in cases of public calamity. The decision in Stephens County v. H. C. Burt & Co., Tex. Civ.App., 19 S.W.2d 951, was based upon that statute. However, in 1931, the Legislature repealed Art. 2368 of R.C.S.1925, and enacted what is now V.A.C.S. Art. 2368a, which required both cities and counties, where more than $2,000 of public funds were to be expended, to submit all such contracts to competitive bids but limited such requirement to "any contract or agreement for the construction of any public building, or the prosecution and completion of any public works * * *." Obviously the purchase of road machinery for the use of the county does not come within the terms of this statute. We find no statute, and none has been cited to us, expressly requiring competitive bids in the purchase by the county of road machinery for its own use. Whether good business management by the commissioners of the county's affairs requires such advertisement is, under existing law, a matter within the discretion of the commissioners court. And whether they should be required by law to do so, is for the Legislature to determine. The fact that the Legislature in 1931 repealed Art. 2368, R.C.S.1925, which did require such competitive bids for all contracts, and enacted V.A.C.S. Art. 2368a, which limited such requirements only to public buildings and public works, rather indicates a legislative intent to leave the matter to the sound discretion of the commissioners court.

Wyatt Metal & Boiler Works v. Fannin County, Tex.Civ.App., 111 S.W.2d 787, involved road materials, clearly within the terms of Art. 1659, and is therefore not applicable here. Oakley v. Kent, Tex.Civ.

App., 181 S.W.2d 919, involved the validity of a special road law for Jefferson County which was therein held to be unconstitutional. While Art. 1659 is referred to, and the holding in Wyatt Metal & Boiler Works v. Fannin County therein approved, the issue here presented was not involved in that case.

■ The next question presented as a basis for venue over Patten in Concho County, are those of conversion and fraud under Secs. 7 and 9 of Art. 1995. In so far as Patten's dealings with Carter were concerned, neither conversion nor' fraud was proven on the hearing appealed from. There was no proof as to what said trucks were worth when sold to the county. Both Patten and Carter testified that they were in good condition when they were bought. Carter testified that one of them had to be repaired shortly after such purchase; but that such repairs cost less than $300, which Patten paid; and that he continued to use them as long as he was commissioner. That is, up to January 1, 1945, and that he hauled large quantities of road material in them. The only testimony to the contrary was that of the auditor as to their condition when he saw them in December, 1945, some two years and eight months after they were purchased. Obviously this testimony was of no probative value as to their condition in April, 1943, when they were purchased.

■ Nor was a prima facie case of conversion by Carter of the $1,250 check belonging to Concho County proven upon said hearing. The manner in which same was handled may have been irregular and not in compliance with Arts. 1622 and 1709, R.C.S.1925. But conversion by a county official of county funds or property necessarily implies a wrongful deprivation of the owner of the use thereof or title thereto; a failure or refusal to deliver same to the rightful owner; or the application of the same to the use and benefit of such official; or his transfer thereof to some one else. In the instant case, there was no proof whatever that Carter benefited from the transaction or that he deprived the county of anything. At no time did he deny that the county owned the check; nor did he apply any of it to his own use. On the contrary it appears that the commissioners court approved the purchase of the trucks at the price agreed upon and authorized and approved the payment to Patten of the first $1,250. Nor is it controverted that the county, which here insists that the check for $1,250 should have been deposited in the county treasury, received the full benefit of such check. While, as above stated, the method of handling the matter may have been irregular; the county legally owed the debt to Patten, same was discharged out of moneys belonging to the county, the county got the full benefit thereof and no benefits were shown to have accrued to Carter. Under such circumstances, we think the county wholly failed to make out any case of conversion even against the resident defendant Carter, within the purview of Sec. 9 of Art. 1995.

This conclusion renders unnecessary a discussion of the question as to whether the county could, by trial amendment to its controverting plea, set up an additional cause of action against Patten, the non-resident defendant, which it had not pleaded in its original petition. This for the reason that under neither of such pleadings did it prove a prima facie cause of action against the resident defendant.

It follows therefore that the trial court erred in overruling appellant's plea of privilege. The order appealed from is reversed and the cause remanded to the trial court with instructions to transfer same as against appellant to the District Court of Bexar County.

Reversed and remanded with instructions.