

# THE ATTORNEY GENERAL
## OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

November 12, 1990

Honorable Jim Mapel
Criminal District Attorney
Brazoria County Courthouse
Room 408A
Angleton, Texas    77515

Opinion No.  JM-1243

Re:  Whether performance and payment bonds are required for certain county unit price contracts    (RQ-1995)

Dear Mr. Mapel:

In your letter you describe  the letting of a  contract to provide hot mix-hot laid and hot mix-cold laid asphaltic concrete as well as asphalt  stabilized base for the  repair of county roads to be applied as required.  Along with  your letter, you  have submitted  the bid  packet, including  the "General Instructions and Special Provisions," which identifies the purpose of the request for bids as follows:

> These  bids  are  being  accepted  so  that Brazoria County  may make  purchases for  the maintenance and  construction of  roads on  a 'more-or-less' quantity  basis, and  Brazoria County reserves  the right  to purchase  only the quantity required to meet its needs on or before the  date of  expiration of  the  firm price bid.

The "Proposal and Bid  Sheet" explains that the  "quantities of materials to be  furnished at the unit prices  bid may be increased or diminished  as may be considered  necessary in the opinion  of the Engineer."   The bid sheet  contains spaces for actual bid prices for hot mix-hot laid  and hot mix-cold  laid asphaltic  concrete  as well  as  asphalt stabilized base for  each precinct in  the county.  The  bid sheet also  contains  a  notation  of  "(5,000  Tons)"  with respect to the  unit price to  be bid for  each ton laid  in place of hot mix-hot  laid asphaltic concrete and a  notation of "(300 Tons)" with  respect to asphalt stabilized base.  No estimated quantities are indicated with regard to either the unit price to be bid for loading hot mix-cold laid asphaltic concrete into county trucks or the unit price to be bid  for hauling a ton of hot  mix-cold laid asphaltic concrete.

We understand from your letter that the notations reflect the quantities estimated by the county to be required for the contract term and that the estimated quantities are based on historical usage. We are also advised that the successful bidder's unit price of $28 for each ton laid in place of hot mix-hot laid asphaltic concrete is consistent with bids submitted in prior years and county estimates of bids to be submitted in response to the request for bids. Given an estimated purchase of 5,000 tons, a unit price of $28 per ton results in an estimated contract price of at least $140,000.

You explain that, subsequent to the letting of the bid, payment and performance bonds submitted by the successful bidder were found to be issued by a surety company that is not authorized to do business in the state. The page in the bid packet entitled "General Instructions and Special Provisions" requires each bidder to furnish performance and payment bonds provided by a bonding company "licensed to do business in the State of Texas." The question you raise is whether, given the uncertainty of the total contract price, the payment and performance bonds are required under article 5160, V.T.C.S. Article 5160 imposes various performance and payment bond requirements for public works contracts in excess of $25,000.[1] In particular, part A of article 5160 requires that both performance and payment bonds "be executed by a corporate surety or corporate sureties duly authorized and admitted to do business in this State and licensed by this State to issue surety bonds."

The bid documents submitted to us indicate that the contract term of the proposed contract was to expire September 30, 1990. Although any particular issues concerning that contract and the related request for bids may no longer need resolution, you have advised us that the county is currently considering requests for bids and future contracts with the selected bidders for provision and application of similar asphaltic materials. Even though we are unable to find facts in the opinion process and can therefore not resolve definitively your concerns about a particular bid or

---

1. While a contract for the purchase of materials for road repair would not be considered a public works contract, see Attorney General Opinion JM-1027 (1989) at 6, a contract for the purchase of the materials and their application is so considered. Austin Bridge Co. v. Teague, 152 S.W.2d 1091 (Tex. 1941).

contract, we provide the following discussion to assist you in applying article 5160 to future solicitations and contracts.[2]

Attorney General Opinion JM-1220 (1990) establishes the framework within which we answer your question. That opinion addressed the question of competitive bidding requirements for the construction of a county vehicle maintenance shed. We concluded therein that in adopting the County Purchasing Act[3] (hereinafter the "act"), the legislature exhibited a "manifest intent" that the act take precedence over subchapter B of chapter 271 of the Local Government Code. In reaching that conclusion, we noted the irreconcilable differences between the act and subchapter B and the more general nature of the act, the later of the two statutes. Gov't Code § 311.026(b); Attorney General Opinion JM-1220, at 13-14.

Although it may be considered dicta in Attorney General Opinion JM-1220, we adhere to our additional conclusion in that opinion that the act, a more general provision, also takes precedence to the extent of conflict over article 5160, a statute enacted prior to the act. Thus, we affirm the statement that "our conclusion [with regard to subchapter B] also applies to conflicts between the County Purchasing Act and V.T.C.S. article 5160." Attorney General Opinion JM-1220, at 14. We thereafter continued that

> [s]ince the County Purchasing Act contains
> provisions relating to bid and performance

---

2. Thus, we do not resolve the issue whether the quoted language concerning bond requirements in the "General Instructions and Special Provisions" imposes as a bid specification the requirement that the bonding company be authorized and admitted to do business in Texas as well as licensed by Texas to issue surety bonds. We also do not address the issue whether other information furnished the bidders but not submitted to us specified the estimated quantities with regard to all items to be bid on a unit price basis as required by section 262.028 of the Local Government Code or any other issues raised by the particular bid and proposed contract other than your question concerning the applicability of article 5160, V.T.C.S.

3. The County Purchasing Act is currently codified as subchapter C of chapter 262 of the Local Government Code.

> bonds, <u>see</u> Local Gov't Code § 262.032(a),
> (b), we think these provisions should prevail
> over article 5160, which provides for per-
> formance bonds but not bid bonds. Since the
> County Purchasing Act makes no provision for
> payment bonds, a county must require con-
> tractors to provide such bonds pursuant to
> article 5160.

<u>Id.</u> at 15.

In accordance with the reasoning in Attorney General Opinion JM-1220 and the law supporting it, the act and not article 5160 controls to the extent of conflict the letting of the contract under consideration here. Thus, as was noted in Attorney General Opinion JM-1220, bid bonds, which are not under consideration here, and performance bonds, which are, are governed by the act. Section 262.032(b) of the Local Government Code, the provision of the act address-ing performance bonds, reads as follows:

> (b) Within 10 days after the date of the
> signing of a contract or issuance of a
> purchase order following the acceptance of a
> bid or proposal, the bidder or proposal
> offeror shall furnish a performance bond to
> the county, <u>if required by the county</u>, for
> the full amount of the contract if that
> contract exceeds $50,000. (Emphasis added.)

Although prior to issuance of Attorney General Opinion JM-1220, county officers may have understood that article 5160 required performance and payment bonds, the county is independently authorized to require performance bonds in certain contracts under the controlling provision of the act. <u>Id.</u> Section 262.032(b) expressly permits the county to require a performance bond. As discussed above, however, Attorney General Opinion JM-1220 provides that since the act is silent with regard to payment bonds, a payment bond, if required for a particular contract, must be obtained in accordance with article 5160.

We now return to your question as modified to reflect the reasoning in Attorney General Opinion JM-1220 with regard to article 5160: whether the indefiniteness of the final total contract price removes this contract from the scope of the payment bond requirements of article 5160 and, we add, from the competitive bidding requirements of the act, including section 262.032(b), which authorizes counties to require performance bonds in certain competitively bid

contracts. Just as article 5160 requires payment bonds in county public works contracts only if the price of the contract is in excess of $25,000, the act requires counties to competitively bid purchases only if the the contract for such purchases will require the expenditure of more than $10,000. Similarly, the act authorizes counties to require performance bonds only if the contract exceeds $50,000. Local Gov't Code §§ 262.023(a), 262.032(b).

As indicated by your question, the final total contract price is unknown because it is based on the requirements of the county over the course of a year, and the county cannot know in advance what its requirements will be. This uncertainty plays a role in all competitive bidding -- the final total cost cannot be known until the bids are received. A governmental entity soliciting bids no more knows in advance the contract price of a proposed lump sum contract than it knows the unit price for a proposed unit price contract. Uncertainty about the final lump sum or unit price does not, however, remove the purchase from the requirements of the act; nor does the uncertainty about quantity in the case of a unit price contract remove a unit price contract from either the scope of the act or the payment bond requirements of article 5160. To hold otherwise would allow counties to avoid the requirements of the act or article 5160 simply by acquiring items on a unit price basis.

With regard to the requirements of the act, the legislature added in 1987 a provision codified as section 262.028 of the Local Government Code, which allows unit price contracts as follows:

> A purchase may be proposed on a lump-sum or unit price basis. If the county chooses to use unit pricing in its notice, the information furnished bidders must <u>specify the approximate quantities estimated on the best available information</u>, but the compensation paid the bidder must be based on the actual quantities purchased. (Emphasis added.)

A requirements contract that measures quantity by the purchaser's good faith requirements, such as the one in issue here, can be reasonably classified as a unit price contract if the terms of the bid and resulting contract require unit prices. <u>Cf.</u> Bus. & Com. Code § 2.306 & comment 2 (requirements contracts do not lack mutuality of obligation since such contracts require purchasers to act in good faith so that their requirements approximate reasonably foreseeable

figures). Although section 262.028 does not expressly refer to requirements contracts, it does provide that purchases may be made using quantities estimated on the best available information. Assuming the estimates of 5,000 and 300 tons provided in the particular bid documents in the instant case are based on the best available information, the letting of the contract here is within the scope of authority conferred on the county by this section. See Canales v. Laughlin, 214 S.W.2d 451 (Tex. 1948); Patten v. Concho County, 196 S.W.2d 833 (Tex. Civ. App. - Austin 1946, no writ).

If we read the competitive bidding threshold found in section 262.023 together with the permissibility of unit pricing and the requirement for an estimated quantity of each item to be purchased found in section 262.028, we can logically conclude only that the legislature intended the product obtained by multiplying the estimated quantity required by section 262.028 times the estimated unit price to be the amount that triggers the requirement that any particular unit price contract be competitively bid. This calculation implicitly requires the county to estimate in advance the unit price to determine whether a unit price contract must be let by competitive bids. A conclusion that the county estimate unit prices as well as quantities in advance is consistent with the general use of estimated lump sum prices in advance to determine if particular lump sum contracts must be bid. If estimated quantities and esti- mated prices are not used to trigger the competitive bidding requirements, a county, wanting to purchase only the amount of an item that it will need over a period of time and without knowing in advance precisely the amount needed, would escape the competitive bidding requirements alto- gether.

Similarly, if we read the threshold in section 262.032(b) together with the permissibility of unit pricing and the requirement for estimated quantities found in section 262.028, we must conclude that the amount that triggers the authorization in section 262.032(b) for coun- ties to require performance bonds is the product obtained by multiplying the estimated quantities to be purchased times the established unit prices. Again, to hold otherwise would not effectuate the legislature's intent in section 262.032(b) to authorize counties to use their discretion to obtain needed performance security in contracts exceeding $50,000.

Likewise, we read the express authority in section 262.028 for a county to make purchases on a unit price basis in conjunction with the requirement in article 5160 for

payment bonds for public works contracts in excess of $25,000. These provisions read together lead us to conclude that the legislature intended to require private persons entering into unit price contracts with counties for prosecution or completion of public works to satisfy the payment bond requirements of article 5160 if such contracts are estimated by the county, using the best available information, to be in excess of $25,000.

In support of this conclusion, we note that the final total contract price for a unit price requirements contract is unknown before commencement of the work. Thus, the county cannot assure compliance with the requirement in article 5160 that required bonds be submitted "before commencing the work" unless estimated quantities are used to determine if article 5160 applies to a particular unit price contract. The total cost of the unit price contract, in fact, remains unknown until the work is completed. Furthermore, only by such a conclusion can the legislative policy behind article 5160 -- protection for suppliers of labor and materials against nonpayment by the contractor -- be effectuated with regard to county public works contracts exceeding $25,000.

Thus, we conclude that the total _estimated_ cost of a county unit price contract, based on the estimated quantity and the established unit price, is sufficiently certain to determine whether article 5160 applies. In reaching this conclusion, we of course have assumed, as the contractor must have done when he made the bid, that the county's estimate was a reasonable one based on "the best available information," as required by section 262.028 of the Local Government Code.

### S U M M A R Y

The County Purchasing Act, subchapter C, chapter 262 of the Local Government Code, allows counties to purchase items by the unit price method and requires counties to furnish bidders with an estimate of the total quantity needed. Requirements contracts are permitted under that section. With regard to county unit price requirements contracts for the prosecution or completion of public works, the product of the estimated total quantity needed, determined on the best available information, and the established unit price provides an estimated total contract price, which if in excess of

p. 6625

$25,000, will trigger the payment bond requirements of article 5160, V.T.C.S. However, section 262.032(b) of the Local Government Code, which authorizes counties to require performance bonds for certain contracts, controls the acquisition of performance bonds.

Very truly yours

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Celeste A. Baker
Assistant Attorney General