

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

May 4, 1995

Honorable Bill Sims
Chair
Committee on Natural Resources
Texas State Senate
P.O. Box 12068
Austin, Texas 78711-2068

Opinion No. DM-347

Re: Whether, under Education Code section 21.901, a school district must competitively bid a contract for the purchase of insurance (RQ-656)

Dear Senator Sims:

You have asked whether a school district that chooses to request bids for the purchase of property insurance must comply with the competitive bidding procedures Texas law sets forth. You state that a school district has chosen to seek bids for the purchase of property insurance, although the school district understands that section 21.901 of the Education Code does not require it to do so. You have further informed us that, as part of the school district's routine, members of the school board review each bid and subjectively evaluate which bid would provide the most benefit to the school district. The school district does not necessarily award the contract to the lowest bidder.

You cite section 21.901 of the Education Code, which you understand governs when a school district must obtain a contract through competitive bidding. Section 21.901 states in pertinent part as follows:

(a) Except as provided in this section, all contracts proposed to be made by any Texas public school board for the purchase of any personal property, except produce or vehicle fuel, shall be submitted to competitive bidding for each 12-month period when said property is valued at $25,000 or more, in the aggregate for each 12-month period.

(b) Except as provided in Subsection (e) of this section, all contracts proposed to be made by any Texas public school board for the construction, maintenance, repair or renovation of any building shall be submitted to competitive bidding when said contracts are valued at more than $15,000. . . .

(c) Nothing in this section shall apply to fees received for professional services rendered, including but not limited to architect[']s fees, attorney's fees, and fees for fiscal agents.

(d) [Providing that school board notify public of time when and place where "such contracts" will be let and bids opened]

(e) [Providing for replacement or repair of school building or school equipment in certain emergency situations]

(f) [Providing for purchase of computers and computer-related equipment]

(g) [Providing for purchase of item available from only one source]

(h) [Providing for lease of one or more school buses]

Your question is premised upon an assumption that, under section 21.901 of the Education Code, a school board need not competitively bid a contract for the purchase of insurance. Indeed, this office concluded in Attorney General Opinion MW-342 that section 21.901 of the Education Code does not require a public school district to competitively bid a contract for the purchase of insurance. Attorney General Opinion MW-342 (1981) at 3. We now wish to re-examine that decision.

Attorney General Opinion MW-342 specifically considered subsections (a) and (c) of Education Code section 21.901. In particular, Attorney General Opinion MW-342 focused on whether the purchase of insurance was the purchase of personal property, and therefore governed by subsection (a), or the purchase of professional services, and therefore governed by subsection (c).

> If "insurance" involved nothing more than the insurance policy which is finally negotiated, we would conclude that the purchase of insurance involved the purchase of property. [Citations omitted.] It is clear, however, that insurers do much more than write policies. A purchaser of property insurance, for example, will be vitally interested in such things as the professionalism exhibited by the insurer, the frequency and thoroughness with which he inspects the insured property, and the promptness, efficiency and honesty with which he services claims and provides assistance. An insurer's ability to provide certain services in a competent manner, in other words, is a dominant, if not the primary, consideration in any purchase of insurance. . . .

> [T]he purchase of insurance cannot be neatly characterized as the purchase of either "personal property" or "professional service," within the meaning of section 21.901; to some extent, both categories are involved. Section 21.901 does not, however, indicate whether a purchase involving both property and services must be made on the basis of competitive bids. But in our opinion, the

> weight of authority compels us to conclude that, at least where insurance is involved, such a purchase need not be so made. . . .
>
> We therefore conclude that a contract for the purchase of insurance would most accurately be described as one for the purchase of services, and therefore, that it need not be awarded through the competitive bidding process. . . .

Attorney General Opinion MW-342 (1981) at 2-3.

In an opinion issued the day after this office issued Attorney General Opinion MW-342, this office considered the parameters of the term "professional services" in the context of V.T.C.S. article 2368a, now Local Government Code section 252.021.[1] Article 2368a governed the competitive bidding and competitive proposal processes of counties and cities of this state.

According to Attorney General Opinion MW-344, a professional service is one requiring "'predominantly mental or intellectual, rather than physical or manual,'" skills. Attorney General Opinion MW-344 (1981) at 4 (quoting *Maryland Casualty Co. v. Crazy Water Co.*, 160 S.W.2d 102, 105 (Tex. Civ. App.--Eastland 1942, no writ)). Furthermore, a "professional" works in a profession that "'requires years of education and service for one to attain competence and [that] calls for a high order of intelligence, skill and learning.'" *Id.* (quoting *Transportation Displays, Inc. v. City of New Orleans*, 346 So. 2d 359, 363 n.5 (La. Ct. App. 1977)).

Finally, the opinion discussed "[t]he most useful standard for judging the scope of 'profession'" from *Wooddell v. Dailey*, 230 S.E.2d 466 (W. Va. 1976). *Id.* at 5. The *Wooddell* court concluded that the services of an interior decorator were not professional services. The *Wooddell* court did not, however, limit the term "professional services" to the professions of theology, law, or medicine, nor to professions specifically recognized as such by statute. *Id.* (citing *Wooddell*, 230 S.E.2d at 469-70). Rather, while "'most occupations, trades, business or callings require a diversity of knowledge and skill,'" not all such occupations, trades, business or callings could be called "professions." *Id.* (quoting *Wooddell*, 230 S.E.2d at 470). A professional is only one who "'is a member of [a] discipline with widely accepted standards of required study or specified attainments in

---

[1]Attorney General Opinion MW-344 (1981) considered whether the board of trustees of the Galveston Wharves was required to competitively bid a contract for the services of a container terminal operator. Article 2368a, section 2(a), V.T.C.S., required a county to competitively bid certain contracts; however, subsection (b) precluded a political subdivision from competitively bidding a contract "for personal or professional services." Accordingly, if the contract for the services of a container terminal operator was a contract for personal or professional services within the context of article 2368a, section 2(a), the board of trustees was forbidden to competitively bid it. Attorney General Opinion MW-344 examined the meanings ascribed to the terms "personal services" and "professional services" to determine whether the contract at issue fell within the scope of either category.

special knowledge as distinguished from mere skill.'"[2] *Id.* (quoting *Wooddell*, 230 S.E.2d at 470).

Subsequently, this office issued Attorney General Opinion MW-494 (1982), which concluded that a county must competitively bid a contract for the purchase of insurance under V.T.C.S. article 2368a, section 2. The opinion distinguished article 2368a, section 2 from section 21.901 of the Education Code and therefore was not bound by the conclusion in Attorney General Opinion MW-342. Notably, according to Attorney General Opinion MW-494, section 21.901 specifically set out two categories of contracts a public school board must competitively bid: subsection (a) pertains to contracts for the purchase of personal property, and subsection (b) pertains to contracts for the construction, maintenance, repair, or renovation of a building or for the purchase of materials to use in such a project. Attorney General Opinion MW-494 (1982) at 3. These two categories do not "cover every type of contract a school district might enter . . . ." *Id.* A school district need not competitively bid contracts outside of the two categories listed in Education Code section 21.901(a) and (b).[3] *Id.*

By contrast, V.T.C.S. article 2368a, section 2(a) prohibited a county or city from making *any* contract requiring an expenditure in an amount exceeding $5,000.00 unless the county or city had competitively bid the contract. *See id.* at 2. Section 2(b) created an exception to the competitive bidding requirement for, among other things, "contracts for personal or professional services." *Id.* This office thus declined to apply its conclusion in Attorney General Opinion MW-342 to the situation before it in Attorney General Opinion MW-494. *See id.* at 3.

---

[2]Based on the standards it set forth, Attorney General Opinion MW-344 concluded that a container terminal operator is not a member of a recognized profession. Attorney General Opinion MW-344 (1981) at 5. Accordingly, the Galveston Wharves board of trustees was required to competitively bid a contract for the services of a container terminal operator. *Id.*

[3]Attorney General Opinion MW-494 summarized the reasoning and conclusion of Attorney General Opinion MW-342 as follows:

> Attorney General Opinion MW-342 stated that an insurance contract did not fit squarely into the category of "personal property" or the exemption for "professional services" under section 21.901 of the Education Code. The services provided under it were significant enough to remove the contract from the category of "personal property," even though they did not constitute "professional services." Under section 21.901 it is unnecessary to show that an insurance contract is a contract for "professional services" to remove it from the competitive bidding requirement. It is only necessary to show that it cannot fairly be characterized as a contract for the purchase of personal property. The discussion in Attorney General Opinion MW-342 of the service aspect of an insurance contract must be read with section 21.901 in mind.

Attorney General Opinion MW-494 (1982) at 3.

Instead, the draft applied the standards Attorney General Opinion MW-344 assigned to the term "personal and professional services" to determine whether a contract for the purchase of insurance was a personal or professional service under V.T.C.S. article 2368a, section 2. Attorney General Opinion MW-494 (1982) at 3-4. The opinion first found that such a contract was not for personal services. *Id.* at 4. Second, the opinion found that such a contract was not for professional services because the provision of insurance coverage does not entail a "body of special knowledge attributable to a profession, the years of study necessary to attain competence, and the wide recognition of the profession and its standards of study." *Id.*

We believe the analyses and conclusions reached in Attorney General Opinions MW-344 and MW-494 are correct; on the other hand, to the extent Attorney General Opinion MW-342 is inconsistent with these opinions by concluding that, under section 21.901 of the Education Code, a contract for the purchase of insurance "would most accurately be described as one for the purchase of" professional services, we believe the opinion is incorrect. Accordingly, we hereby overrule Attorney General Opinion MW-342 to the extent it concludes that a contract for the purchase of insurance under Education Code section 21.901 is a contract for professional services that section 21.901 excepts from the competitive bidding process.

Furthermore, to the extent Attorney General Opinion MW-342 concludes that a contract for the purchase of insurance is not a contract for the purchase of personal property subject to competitive bidding under Education Code section 21.901(a), we overrule it. Likewise, to the extent Attorney General Opinion Attorney General Opinion MW-494 suggests a contract for the purchase of insurance is not personal property for purposes of section 21.901 of the Education Code, we overrule it. "Personal property" generally is "all property other than real estate," BLACK'S LAW DICTIONARY 1096 (5th ed. 1979); it includes "goods, chattels, money, notes, bonds, stocks and choses in action generally, including intangible property," *id.* (citing *Bismarck Tribune Co. v. Omdahl*, 147 N.W.2d 903, 906 (N.D. 1966)). An insurance policy constitutes a contract between the insurer and insured. *International Travelers' Ass'n v. Gunther*, 269 S.W. 507, 508 (Tex. Civ. App.--San Antonio 1925), *rev'd on other grounds*, 280 S.W. 172 (Tex. Comm'n App. 1926, judgm't adopted). The Texas Supreme Court has concluded that the right to receive insurance proceeds payable in the future is "property." *See Brown v. Lee*, 371 S.W.2d 694, 696 (Tex. 1963). Similarly, a court of civil appeals has concluded that a spouse's disability insurance policy is a property right belonging to the community estate. *Mathews v. Mathews*, 414 S.W.2d 703, 707 (Tex. Civ. App.--Austin 1967, no writ).

In sum, we conclude a contract for the purchase of insurance is a contract that section 21.901 of the Education Code requires a school board to competitively bid if the value of the contract is $25,000 or more for a twelve-month period. We do not, by this conclusion, discount our suggestion in Attorney General Opinion MW-342 that a conscientious consumer purchases an insurance policy on the basis of an insurer's professionalism and the promptness, efficiency, and honesty with which the insurer services claims, as well as on the basis of price. *See* Attorney General Opinion MW-342

(1981) at 2. We believe that a school board properly may consider these factors in the process of competitive bidding, however. Nothing in Education Code section 21.901 requires a school board to accept the lowest bid submitted. Timothy T. Cooper & Janet L. Horton, *Competitive Bid Requirements for School District Contracts*, 46 TEX. B.J. 1154, 1154 (1983). Furthermore, we are unaware of any other statute that requires a school board to select the lowest bid submitted in response to a request for bids on the purchase of insurance or any other personal property. *See* Local Gov't Code § 271.005; *see also id.* §§ 271.004, .021 - .030 (providing for contracts for purchase of real property and for public improvements).

Rather, the school board only must "act faithfully and in the exercise of [its members'] best judgment so as to best serve the interest of [its] district." *See Texas Roofing Co. v. Whiteside*, 385 S.W.2d 699, 702 (Tex. Civ. App.--Amarillo 1964, writ ref'd n.r.e.); *Stapleton v. Trussell*, 196 S.W. 269, 270 (Tex. Civ. App.--Fort Worth 1917, no writ); *see also* Cooper & Horton, *supra*, at 1154. Generally, in competitive bidding situations, a governmental body may reject the lowest bid "'if, in the exercise of an honest discretion, another seems to be better for the object to be accomplished.'" Cooper & Horton, *supra*, at 1154 (quoting EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 29.73a, at 429-30 (1971)).

In relation to the procedures a school board must use when competitively bidding a contract under section 21.901(a), we note that, with the exception of the notice requirements provided in subsection (d), section 21.901 articulates no mandatory procedures a school district must follow in the competitive bidding process. *See also id.* Section 271.005 of the Local Government Code authorizes the board of trustees of a school district to contract for the use or purchase of personal property, but it does not set forth any mandates with which a board must comply. Other sections of the Local Government Code articulate competitive bidding requirements to which a governmental body must comply in certain situations, but the sections are inapplicable to a contract for the purchase of insurance. *See* Local Gov't Code §§ 271.004, .021 - .030 (pertaining to contract for use or purchase of real property or improvement to real property and to contract for construction, repair, or renovation of structure, road, highway, or other improvement or addition to real property requiring expenditure of more than $10,000). Instead, we believe the school board may devise its own bidding procedure, so long as the procedure is consistent with good business management. *See* Educ. Code § 23.26(b) (providing board of trustees with exclusive power to manage and govern district's schools); *Patten v. Concho County*, 196 S.W.2d 833, 835 (Tex. Civ. App.--Austin 1946, no writ); *see also Texas Roofing Co.*, 385 S.W.2d at 702; *Stapleton*, 196 S.W. at 270; *cf.* Attorney General Opinion DM-14 (1991) at 3 (concluding that federal law requires local school board to competitively bid contracts for purchase of food service management services because "[i]n the absence of applicable state regulations, the selection of specific procedures is within the sound discretion of local school boards").

Of course, if a contract is valued at less than $25,000 for a twelve-month period, Education Code section 21.901 does not require a school board to competitively bid it. In

such a situation, a school board may opt to competitively bid the contract if the board determines that good business management requires it. *See Patten*, 196 S.W.2d at 835; *see also Texas Roofing Co.*, 385 S.W.2d at 701; *Stapleton*, 196 S.W. at 270; Attorney General Opinion DM-106 (1992) at 2 (stating that, even if municipality determines that auctioneering services are professional services and that municipality therefore need not competitively bid contract for purchase of such services, municipality may choose to competitively bid contract). If the board opts to competitively bid a contract, the board must devise a competitive bidding procedure that is consistent with good business management. *See* Educ. Code § 23.26(b) (providing board of trustees with exclusive power to manage and govern district's schools); *Patten*, 196 S.W.2d at 835; *see also Texas Roofing Co.*, 385 S.W.2d at 702; *Stapleton*, 196 S.W. at 270; *cf.* Attorney General Opinion DM-14 (1991) at 3.

To specifically answer your question, then, a school board may not choose whether to competitively bid a contract for the purchase of insurance if the value of the contract is $25,000 or more for a twelve-month period; rather, under section 21.901(a) of the Education Code, a school board must competitively bid such a contract. You do not indicate the value of the contact about which you ask; we cannot, therefore, determine whether the school board must have competitively bid the contract. If the contract was valued at $25,000 or more for a twelve-month period, the school board must comply with *the notice requirements articulated in section 21.901(d) of the Education Code. As to the* remaining competitive bidding procedures, the school board must select a procedure that is consistent with good business management. If the contract is valued at less than $25,000 for a twelve-month period, the school board may competitively bid the project if the board determines that good business management requires it. In such a situation, the board must devise a competitive bidding procedure that is consistent with good business management.

## S U M M A R Y

To the extent Attorney General Opinion MW-342 (1981) concludes that a contract for the purchase of insurance under Education Code section 21.901 is a contract for professional services that section 21.901(c) excepts from the competitive bidding process, it is overruled. Furthermore, to the extent Attorney General Opinion MW-342 concludes that a contract for the purchase of insurance is not a contract for the purchase of personal property subject to competitive bidding under Education Code section 21.901(a), it is overruled. Likewise, to the extent Attorney General Opinion Attorney General Opinion MW-494 (1982) suggests that a contract for the purchase of insurance is not personal property for purposes of section 21.901(a) of the Education Code, we overrule it.

Under section 21.901(a) of the Education Code, a school board must competitively bid a contract for the purchase of insurance if the

contract is valued at $25,000 or more for a twelve-month period. In evaluating which bid to accept, the school board may consider factors other than cost, such as the insurer's professionalism and the promptness, efficiency, and honesty with which the insurer services claims.

When a school board must competitively bid a contract under section 21.901(a), it must comply with the notice requirements set out in subsection (d). The school board must devise the remainder of the competitive bidding procedure consistent with good business management. In the event a school board need not competitively bid a contract for the purchase of insurance because the contract is valued at less than $25,000 for a twelve-month period, the school board may choose to competitively bid the contract if the board determines that good business management requires it. The school board must devise a competitive bidding procedure that is consistent with good business management.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General