

OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS
JOHN CORNYN

April 4, 2000

The Honorable Troy Fraser
Co-Chair, Committee on Redistricting
Texas State Senate
P.O. Box 12068
Austin, Texas 78711-2068

Opinion No. JC-0205

Re: Whether a junior college district may procure insurance using a designated broker of record (RQ-0135-JC)

Dear Senator Fraser:

You ask about the authority of a junior college district to procure insurance using a designated broker of record. We conclude that a junior college district may not use a designated broker of record to purchase insurance contracts with premiums of an aggregate value of $10,000 or more for each twelve-month period. *See* TEX. EDUC. CODE ANN. §§ 44.031, 44.033 (Vernon Supp. 2000). A junior college district that expends less than $10,000, in the aggregrate, on insurance premiums for each twelve-month period may use a designated broker of record to purchase insurance contracts, but the district's board of trustees should ensure that use of a designated broker of record is in the district's best interest and select a designated broker of record in a manner it determines is consistent with good business management. The district must also ensure that it purchases insurance according to a method that is in the district's best interest and that is consistent with good business management.

Before turning to your query, we wish to clarify the scope of this opinion. You ask: "Given all the choices an institution of higher education has to procure insurance (Education Code 44.031), is using a designated broker of record legitimate?" Letter from Honorable Troy Fraser, Texas State Senate, to Honorable John Cornyn, Texas Attorney General (Oct. 29, 1999) (on file with Opinion Committee) [hereinafter "Request Letter"]. The term "institution of higher education" could include both state universities and junior colleges. *See* TEX. EDUC. CODE ANN. § 61.003(8) (Vernon Supp. 2000) (defining "institution of higher education"). However, we limit our analysis to junior colleges. We do so because section 44.031 of the Education Code applies to school districts and junior college districts and does not apply to other institutions of higher education. *See id.* §§ 44.031, .0311. In addition, the request letter states that you submit the query on behalf of an insurance agent whose interest in these issues results from his unsuccessful attempt to bid to provide insurance to Tarrant County College, a junior college, *see id.* § 130.201. *See* Request Letter at 1. We also note that the letter states that the insurance agent "is concerned that [] institutions are using the broker of record to eliminate minority bidders." *Id.* at 1. Because you have not asked any particular questions in this regard, we do not address this issue.

Your letter does not provide details about the relationship between a junior college district and a "designated broker of record." We assume you refer to a situation where the junior college district arranges to purchase insurance through a single insurance agent who then obtains bids or proposals from insurance companies on the junior college district's behalf. We assume that the broker is licensed as may be required by the Insurance Code. *See, e.g.*, TEX. INS. CODE ANN. arts. 21.07-1, 21.07-2, 21.14, 21.14-1 (Vernon 1981 & Supp. 2000). We also gather that the insurance companies from whom the junior college district purchases insurance pay the agent a commission and that the agent is not compensated by the junior college district.

We understand that an insurance agent will be affiliated with a limited number of insurance companies. For this reason, a designated broker of record will not be able to solicit rates on the district's behalf from all possible insurance companies for a particular policy. Because the use of a designated broker of record will necessarily limit the number of companies from which the district may purchase insurance, it may foreclose the district's access to the most advantageous rates and terms.

Before answering your questions, we briefly review the unique legal status of junior college districts and the Education Code provisions regarding junior college district purchases, including purchases of insurance contracts. Under the Education Code, "The board of trustees of junior college districts shall be governed in the establishment, management and control of the junior college by the general law governing the establishment, management and control of independent school districts insofar as the general law is applicable." TEX. EDUC. CODE ANN. § 130.084 (Vernon 1991). For this reason, junior college districts are governed by many of the same statutes that govern school districts.

In the absence of specific statutory requirements and limitations, school and junior college district boards of trustees are granted broad authority to manage the affairs of their districts. *See id.* § 11.151(b) (Vernon 1996) ("The trustees as a body corporate have the exclusive power and duty to govern and oversee the management of the public schools of the district."). School district purchases of a certain monetary value are governed by the detailed provisions of subchapter B of chapter 44 of the Education Code, including section 44.031 of the Education Code mentioned in your request. In 1996, this office concluded that a junior college district was subject to subchapter B. *See* Tex. Att'y Gen. Op. No. DM-387 (1996) at 3-4. The Seventy-sixth Legislature recently confirmed this conclusion by enacting section 44.0311 of the Education Code, which expressly provides that subchapter B applies to junior college districts. *See* TEX. EDUC. CODE ANN. § 44.0311(a) (Vernon Supp. 2000) (enacted by Act of May 28, 1999, 76th Leg., R.S., ch. 1225, § 2, sec. 44.0311, 1999 Tex. Gen. Laws 4257, 4258-59). Thus, for purposes of subchapter B "'board of trustees' includes the governing board of a junior college district." *Id.* § 44.0311(b).

For purposes of section 44.031 and other provisions in subchapter B, a contract to purchase insurance is not a contract for professional services, but rather a contract to purchase personal property subject to generally applicable purchasing procedures. *See* Tex. Att'y Gen. Op. No. DM-347 (1995) at 5-7 (concluding a contract to purchase insurance was a contract to purchase

personal property subject to statutory predecessor to section 44.031 of the Education Code, former Education Code, section 21.901) (overruling Tex. Att'y Gen. Op. Nos. MW-494 (1982), MW-342 (1981)); *see also* Tex. Att'y Gen. Op. No. DM-418 (1996) at 5 ("[S]ection 44.031 does not affect our conclusion in Attorney General Opinion DM-347 that a contract for the purchase of insurance is not a contract for professional services. . . . Under section 44.031 of the Education Code, a school board must award all contracts not for professional services, produce, or vehicle fuel in accordance with subsection (a), so long as the value of the contract exceeds $24,999.99 in the aggregate for a twelve-month period."). Thus, although the subchapter B purchasing provisions, as a general matter, do not apply to contracts for personal services, we need not consider that exception here. *See* TEX. EDUC. CODE ANN. § 44.031(f) (Vernon Supp. 2000) ("This section does not apply to a contract for professional services rendered, including services of an architect, attorney, or fiscal agent. A school district may, at its option, contract for professional services rendered by a financial consultant or a technology consultant in the manner provided by Section 2254.003, Government Code, in lieu of the methods provided by this section.").

Like purchases of most items, the procedures applicable to the purchase of insurance will depend upon the aggregate value of the school or junior college district's insurance contract premiums in a twelve-month period. Section 44.031, which applies to purchases valued at $25,000 or more in the aggregate for each twelve-month period, lists several purchasing methods and requires a district to use the method that provides the best value:

> (a) Except as provided by this subchapter, all school district contracts, except contracts for the purchase of produce or vehicle fuel, valued at $25,000 or more in the aggregate for each 12-month period shall be made by the method, of the following methods, that provides the best value for the district:
>
> (1) competitive bidding;
>
> (2) competitive sealed proposals;
>
> (3) a request for proposals, for services other than construction services;
>
> (4) a catalogue purchase as provided by Subchapter B, Chapter 2157, Government Code;
>
> (5) an interlocal contract;
>
> (6) a design/build contract;
>
> (7) a contract to construct, rehabilitate, alter, or repair facilities that involves using a construction manager; or

> (8) a job order contract for the minor construction, repair, rehabilitation, or alteration of a facility.

*Id.* § 44.031(a). A district may also consider several subjective factors:

> (b) Except as provided by this subchapter, in determining to whom to award a contract, the district may consider:
>
>> (1) the purchase price;
>>
>> (2) the reputation of the vendor and of the vendor's goods or services;
>>
>> (3) the quality of the vendor's goods or services;
>>
>> (4) the extent to which the goods or services meet the district's needs;
>>
>> (5) the vendor's past relationship with the district;
>>
>> (6) the impact on the ability of the district to comply with laws and rules relating to historically underutilized businesses;
>>
>> (7) the total long-term cost to the district to acquire the vendor's goods or services; and
>>
>> (8) any other relevant factor that a private business entity would consider in selecting a vendor.

*Id.* § 44.031(b); *see also R.G.V. Vending v. Weslaco Indep. Sch. Dist.*, 995 S.W.2d 897, 899-900 (Tex. App.–Corpus Christi 1999, no pet.) ("[T]he criteria listed in section 44.031(b) are the only criteria that may be considered by the district in its decision to award the contract. The use of permissive language in the statute indicates that a school district has the discretion to apply one, some, or all of those criteria. The school district may not, however, completely ignore the listed criteria."). Section 44.031 authorizes a district board of trustees to "adopt rules and procedures for the acquisition of goods or services." TEX. EDUC. CODE ANN. § 44.031(d) (Vernon Supp. 2000).

Again, section 44.031 applies only to purchases valued at $25,000 or more in the aggregate for each twelve-month period. Another statute, section 44.033, governs purchases of personal property with a value of at least $10,000 but less than $25,000, in the aggregate, for a twelve-month period. *See* Tex. Att'y Gen. Op. No. DM-418 (1996) at 7 (noting that section 44.033 of the Education Code applies to purchases of insurance). This provision requires a district to purchase those items either in accordance with section 44.031(a) and (b) or according to special procedures.

*See* TEX. EDUC. CODE ANN. § 44.033(a) (Vernon Supp. 2000) ("A school district shall purchase personal property as provided by this section if the value of the items is at least $10,000 but less than $25,000, in the aggregate, for a 12-month period. In the alternative, the school district may purchase those items in accordance with Sections 44.031 (a) and (b)."). The special procedures set forth in section 44.033 include publishing notice, creating a vendor list, and obtaining price quotations from at least three vendors. *See id.* § 44.033(b), (c).

The phrase "in the aggregate," as it is used in sections 44.031 and 44.033, requires a district "cumulatively to value contracts for like products that a school district normally would purchase together." Tex. Att'y Gen. Op. No. DM-418 (1996) at 9. Whether a district must aggregate premiums paid on different types of insurance coverages:

> may depend upon the local market; . . . the types of coverage involved, the size or location of the school district, and other factors that we are unable to predict. Possibly, one school district would normally contract to purchase certain products together, while another school district normally would not contract to purchase the same products together.

*Id.*

Finally, contracts with a value of less than $10,000, in the aggregate, for a twelve-month period are not subject to chapter 44, subchapter B. In the absence of statutory limitations on purchasing, school district trustees "'are required merely to act faithfully and in the exercise of their best judgment so as to best serve the interest of their district.'" *Gaynor Constr. Co. v. Board of Trustees, Ector County Indep. Sch. Dist.*, 233 S.W.2d 472, 478 (Tex. Civ. App.–El Paso 1950, writ ref'd) (citing Tex. Att'y Gen. Op. No. O-525 (1939)); *see also Stapleton v. Trussell*, 196 S.W. 269, 270 (Tex. Civ. App.–Fort Worth 1917, no writ). Thus, if contracts have an aggregate yearly value of less than $10,000, a district has the discretion to determine how it will make the purchases. A district may opt to make such purchases using the competitive procedures set out in sections 44.031 and 44.033 if its board of trustees determines that good business management requires it. *See* Tex. Att'y Gen. Op. No. DM-347 (1995) at 6-7 (noting that school district may use competitive bidding to make purchases valued at less than statutory cap if school board determines that good business management requires it); *see also Patten v. Concho County*, 196 S.W.2d 833, 835 (Tex. Civ. App.–Austin 1946, no writ) (although not required to make particular purchase through competitive bidding, commissioners court in its discretion may utilize such procedure if it determines "good business management" requires it).

We now turn to your specific questions. First, you ask whether a junior college district's purchase of insurance through a designated broker of record is legitimate under section 44.031 of the Education Code. We conclude that chapter 44, subchapter B of the Education Code does not permit the use of a designated broker of record for insurance contract purchases subject to its provisions.

Section 44.031 and its sister statute, section 44.033, establish a list of permissible purchasing methods for contracts over a certain aggregate yearly value. Since chapter 44, subchapter B was first enacted in 1995, the list of permissible methods has become increasingly comprehensive and now includes methods that involve the services of an individual. For example, section 44.031 now includes as a purchasing method use of "a contract to construct, rehabilitate, alter, or repair facilities that involves using a construction manager." TEX. EDUC. CODE ANN. § 44.031(a)(7) (Vernon Supp. 2000). Sections 44.037 and 44.038 set forth specific procedures for using a construction manager. We believe that, like use of a construction manager, use of a designated broker of record to purchase insurance is a purchasing method that must be expressly authorized.

Furthermore, as we have noted, a designated broker of record will have affiliations with a limited number of insurance companies. As a result, use of a designated broker of record will necessarily limit a district's access to all available rates and terms and might foreclose the district's access to the most advantageous rates and terms. This is contrary to the purpose of the subchapter B competitive purchasing procedures, which is to ensure that districts obtain the best value. See id. § 44.031(a) (charging districts with selecting the method that provides the "best value for the district"). In addition, of the eight purchasing methods authorized by section 44.031(a), competitive bidding, competitive sealed proposals, and a request for proposals appear to be most suited to insurance contract purchases. Even if a district were to instruct a designated broker of record to solicit terms and rates using one of these methods, the district would not have used the method in its truest, most complete form. For this reason, we believe that the legislature must expressly authorize use of designated brokers of record, as it has done in the context of certain municipal insurance purchases. See TEX. LOC. GOV'T CODE ANN. § 252.024 (Vernon 1999) (providing that municipal competitive purchasing requirements do not "prevent a municipality from selecting a licensed insurance broker as the sole broker of record to obtain proposals and coverages for excess or surplus insurance").

In sum, because use of a designated broker of record is not authorized by sections 44.031 and 44.033, a junior college district may not use a designated broker of record to purchase insurance contracts with premiums with an aggregate yearly value of $10,000 or more. A district must use one of the methods listed in section 44.031 if purchasing insurance contracts with premiums of $25,000 or more in the aggregate for each twelve-month period. It must comply with section 44.033 if purchasing insurance contracts with premiums of at least $10,000 but less than $25,000, in the aggregate, for a twelve-month period. See TEX. EDUC. CODE ANN. §§ 44.031, .033 (Vernon Supp. 2000). Again, the phrase "in the aggregate," as it is used in sections 44.031 and 44.033, requires a district "cumulatively to value contracts for like products that a school district normally would purchase together." Tex. Att'y Gen. Op. No. DM-418 (1996) at 9. Whether a district must aggregate premiums paid on different types of insurance coverages will depend upon a number of factors and is beyond the purview of this office. See id.

For purchases of insurance contracts with premiums with an aggregate yearly value of less than $10,000, districts have greater, but not unfettered, discretion. Given that use of a designated broker of record will automatically limit the insurance companies available to a district, each junior

college district board of trustees is obligated to consider whether use of a designated broker of record is in its district's best interest. *See Gaynor Constr.*, 233 S.W.2d at 478. Other options may provide a district with more advantageous rates and terms. Because a district does not compensate a designated broker of record, the selection of a designated broker is not governed by section 44.031 or 44.033. However, should the board decide that use of a designated broker of record is in the district's best interest, the board should also consider whether good business management requires selection of a designated broker of record according to a competitive process borrowed from chapter 44, subchapter B or of its own design. *See* Tex. Att'y Gen. Op. No. DM-347 (1995) at 6-7.

Your second question is as follows: "If an institution of higher education uses competitive bidding to hire a designated broker of record[,] is the broker then required to use competitive bidding to procure insurance?" Request Letter at 1. Given our conclusion that a district is not authorized to use a designated broker of record for purchases subject to sections 44.031 and 44.033, we address this question only with respect to purchases of insurance contracts with premiums with an aggregate yearly value of less than $10,000. We do not believe that the method a district uses to select a designated broker of record dictates the method used to purchase insurance. We also stress that it is the district, rather than the broker, that actually purchases insurance from insurance companies. A junior college district that uses a designated broker of record must work with the agent to ensure that the district purchases insurance according to a method that is in the district's best interest and is consistent with good business management.

## S U M M A R Y

A junior college district may not use a designated broker of record to purchase insurance contracts with premiums of an aggregate value of $10,000 or more for each twelve-month period. *See* TEX. EDUC. CODE ANN. §§ 44.031, 44.033 (Vernon Supp. 2000).

A junior college district that expends less than $10,000, in the aggregate, on insurance premiums for each twelve-month period may use a designated broker of record to purchase insurance contracts, but the district's board of trustees should ensure that use of a designated broker of record is in the district's best interest and select a designated broker of record in a manner it determines is consistent with good business management. The district must also ensure that it purchases insurance according to a method that is in the district's best interest and is consistent with good business management.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General - Opinion Committee